UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | No. 1:18-mj-88 (GMH) |
| v. | : | |
| | : | |
| | : | |
| MAJID GHORBANI, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT
## OF PRETRIAL DETENTION

### Introduction

The United States of America, by and through the U.S. Attorney for the District of Columbia, submits this memorandum in support of the defendant's pretrial detention. As explained below, and as the government will demonstrate at any hearing on this matter, Majid Ghorbani ("Ghorbani" or defendant) poses a serious risk of flight based on the nature of the charges, his history of deceptive conduct, the potential sentence he faces, the strong evidence of guilt, and his significant ties and loyalty to Iran and the Government of Iran.

The defendant, an Iranian citizen, stands charged with violations of 18 U.S.C. §§ 371 and 951(a), and the International Emergency Economic Powers Act ("IEEPA," 50 U.S.C. § 1701, *et. seq.*, for his role in a covert Iranian operation, which took place in the United States and involved surveillance of constitutionally protected activities occurring in this country. The charges in this case implicate not only Ghorbani, but also the activities of a dual U.S.-Iranian citizen who traveled to the United States to task the defendant on behalf of the Government of Iran, who has also been arrested and has consented to detention pending removal to this Court for prosecution.

Because Ghorbani has been exposed as an illegal agent of Iran, there is the grave risk that he will appeal to those within that government with whom he conspired to aid his escape from the United States. Given these circumstances, Ghorbani presents a serious risk of flight and this Court should grant the government's motion to detain the defendant pending trial.

## Principles Governing Requests for Detention

Under the Bail Reform Act, courts consider the following factors in determining whether some condition, or combination of conditions, will reasonably assure the defendant's appearance at trial and pre-trial proceedings: the nature and circumstances of the charged offenses; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see United States v. Bikundi*, 47 F. Supp. 3d 131, 133 (D.D.C. 2014); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 & n.1 (D.D.C. 2013).

At a detention hearing, the government may present evidence by way of a proffer. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996); *United States v. Roberson*, No. 15-cr-121, 2015 WL 6673834, at *1 (D.D.C. Oct. 30, 2015). When the government seeks to detain a defendant on the ground that the defendant is a risk of flight pursuant to 18 U.S.C. § 3142 (f)(2)(A), the government must demonstrate the defendant's flight risk by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

**Factual Proffer of the Evidence Supporting the Charges**

The conduct charged in the Indictment arises from the defendant acting as an agent of the Government of Iran. The United States proffers the factual allegations as set out in the affidavit in support of a criminal complaint, which is attached hereto as Exhibit A and incorporated herein.

In sum, from at least July 2017, up to and including the present, Majid Ghorbani has acted as a covert agent of the Government of Iran within the United States. As demonstrated in Exhibit A, Ghorbani conducted surveillance of individuals who were members of organizations or groups with whom the Iranian regime is extremely hostile. Ghorbani, an Iranian citizen but lawful permanent resident, is able to travel freely within the United States. In 2017 and 2018, Ghorbani traveled to various locations in the United States, including the District of Columbia and New York, collecting information about people who were members of those groups or organizations, by taking photographs and obtaining biographical information, and relayed that intelligence collection back to Iran.

Ghorbani was paid in cash for these activities when his co-conspirator traveled to the United States from Iran in December 2017. Ghorbani later traveled to Iran for additional "taskings" in 2018. The fruits of Ghorbani's activities on behalf of the Iranian regime, including photographs and identifying information of Americans, were discovered hidden in undergarments in his co-conspirator's luggage pursuant to a surreptitious search warrant issued by the Foreign Intelligence Surveillance Court in Washington, D.C. (FISC), as that co-conspirator left an airport in United States for Iran. FISC-authorized electronic surveillance also captured the movements of, and conversations between, Ghorbani and his co-conspirator. During their 2017 encounter, Ghorbani and his co-conspirator employed techniques, such as verbal "paroles" (or code-words) and "surveillance detection routes," which are highly indicative of the conduct of agents of

government intelligence, including the Iranian government.  In their first meeting, it did not appear that Ghorbani and his co-conspirator had a pre-existing personal relationship.  The fact that Ghorbani responded to that initial meeting by agreeing to conduct covert surveillance on behalf of the government is indicative of a previous relationship and/or communication plan with the Government of Iran.

During the defendant's post-arrest interview, he told the FBI that he had relatives in Iran.  He also told the agents conducting the interview that if he told them "the truth," they could not protect him.

The 1961 Vienna Convention on Diplomatic Relations binds the nation-state parties to the doctrines of inviolability and diplomatic immunity.  A recognition of diplomatic immunity extends not only to official foreign consulates and embassies, but to the residences and automobiles of diplomats.  U.S. law enforcement may not enter or detain a duly-accredited diplomatic vehicle unless it is a hazard to safety.  Further, U.S. law enforcement may not interfere with, or impede, a foreign citizen's access to consular services.  From a practical standpoint, this doctrine would permit the defendant to enter any diplomatic vehicle belonging to any diplomat, any consulate, or any embassy and remain outside the reach of this Court indefinitely.  Further, should the defendant enter and remain in a diplomatic vehicle, U.S. law enforcement would be powerless to stop that vehicle from driving outside the United States, and beyond the reach of the Court, with the defendant inside.  The "Interests Section" (ISEC) of the Islamic Republic of Iran in the United is a part of the Pakistani Embassy in Washington, D.C., and is the de facto consular representation of the Islamic Republic of Iran in the United States.

Ghorbani's work on behalf of the Iranian regime necessarily involved the use of deception – he was tasked to infiltrate a group of Iranian dissidents in order to surreptitiously photograph and identify its members.  In his own words, Ghorbani "penetrate[d]" the organization in an attempt to make "packages" of information to send back to Iran.  While he discussed these packages, the defendant noted of one of the subjects, "motherfuckeris . . .

working for Mossad now . . . he works for these people too . . . he gets paid; he is one of thosemotherfucking Jews . . . I swear; motherfucker needs one- one shot." The defendant's co-conspirator laughed throughout this exchange. Further, when Ghorbani returned from Iran in April 2018, he harbored apparent instructions to train a second agent to act like him "inside the organization."

At the defendant's initial appearance in this district, the government requested that he be detained pursuant to 18 U.S.C. § 3142(f)(2)(A), because he poses a serious risk of flight. Defendant has substantial ties to Iran, including family members, in addition to his alleged relationship with the Iranian regime. The defendant's actions on behalf of a hostile government as well as his record of deception in support of his mission, undermines any representation he might make to the Court about his intention to comply with the terms of any conditions or combination of conditions of release.

### No Condition or Combination of Conditions Will Reasonably Assure the Defendant's Appearance in Court

1. **Nature and Circumstances of the Offense(s) Charged**

The circumstances of the offenses charged in this case overwhelmingly support detention. By its very nature, this case involves charges against a foreign national whose demonstrated allegiance is to Iran. His strong incentive is to retreat to Iran where he will never be required to submit to the jurisdiction or orders of a United States court.

The possible maximum terms of imprisonment that the defendant faces upon conviction provide an incentive to flee. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). The defendant faces twenty years of imprisonment for the charged violation of IEEPA; ten years of imprisonment on the charge of a violation of 18 U.S.C. § 951; and five years of imprisonment for violating 18 U.S.C. § 371. Courts have repeatedly held that with serious charges and the possibility of considerable punishment comes "a substantial incentive to flee the United States."

*See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention appropriate for defendant facing stiff penalties for bribery and visa fraud). Simply put, the defendant has little incentive to appear before this Court and submit to the jurisdiction of the United States.

The defendant's charges include his role in a covert intelligence collection operation to gather identifying information of opponents of the Iranian regime and transmit that information back to Iran. In order to succeed in his efforts, Ghorbani masked himself as a supporter of these individuals and their Constitutionally protected protest activities in the United States. In truth, Ghorbani was an undercover agent for a hostile regime, gaining the trust of these individuals and then turning on them – and turning them in. Whether Ghorbani did this simply for the money or instead out of loyalty to the Iranian regime, is of no moment for these charges.

What is significant for this Court, however, is that the charges in this case implicate not only Ghorbani and his co-conspirator, but also the activities of the Iranian regime, a designated supporter of international terrorism with whom the United States enjoys no formal diplomatic relationship. The revelation, through trial, of the details of Iran's surveillance of its "enemies" within the United States, would be extremely damaging. Because Ghorbani has been exposed as an illegal agent of Iran, there is the grave risk that he could appeal to those within that government with whom he conspired to aid his escape from the United States.

Further, the crimes Ghorbani is alleged to have committed are considered "political offenses" by many foreign governments. As such, the Iranian regime could appeal to another foreign government to assist in Ghorbani's departure from the United States. Any order by this Court would be unenforceable against someone protecting Ghorbani under the umbrella of diplomatic immunity and inviolability. Accordingly, the Court should grant the government's motion to detain Ghorbani pending trial.

**2. The Weight of Evidence Against the Defendant**

Courts also consider the weight of the evidence in assessing the risk of light. 18 U.S.C. § 3142(g)(2). The weight of the evidence against the defendant is substantial. The FBI has acquired significant electronic and physical surveillance of the defendant, including recorded phone calls and recorded conversations in his car in which he discusses his activities on behalf of the Government of Iran.

**3. The History and Characteristics of the Defendant**

The defendant is an Iranian citizen with many current ties to Iran. "That the defendant is an alien may be taken into account, but alienage does not by itself 'tip the balance either for or against detention.'" Townsend, 897 F.2d at 994, quoting United States v. Motamedi, 767 F.2d 1403 (9th Cir. 1985). Although the defendant has lived in the United States and has some family in the United States, he nonetheless presents an immediate flight risk following reasons: (1) he faces up to 75 years' imprisonment upon conviction, and (2) he is connected to the hostile Iranian government regime. Moreover, if defendant represents at the hearing that he or his family has the financial resources necessary to pay for a bond, he and his family also have the financial resources necessary facilitate his flight from the country.

The defendant holds an Iranian passport and has traveled to Iran on it recently in furtherance of the charged offenses. Iran could issue the defendant another passport if he were ordered to surrender this one.

Finally, deception was central to the defendant's crime and deception was defendant's first instinct when confronted by the FBI. This Court simply has no reason to trust his word that he will appear when called to answer the charges against him.

4. **The Nature and Seriousness of the Danger to Any Person or the Community that Would Be Posed by the Person's Release**

The case involves the gathering and transmission of information about U.S. persons and facilities to Iran. In the course of this offense, the defendant stated, during an expletive-laden discussion, that one of the people he had photographed just needs "one shot." We bring this statement to the Court's attention not only to demonstrate the danger that the defendant's information-gathering posed to his targets; but to establish the defendant's hostile state of mind while he conducted this surveillance activity.

## Conclusion

Based on the nature of the charges and the weight of the proffered evidence against the defendant, no condition or combination of conditions will reasonably assure the appearance of the defendant at trial. Under the factors set forth in 18 U.S.C. § 3142(g), the government has demonstrated by a preponderance of the evidence that the defendant is a flight risk.

For the foregoing reasons, as well as those that the government will demonstrate at any hearing on this matter, the government requests that the Court order the pre-trial detention of the defendant.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845


By: _____/s/_____
JOCELYN BALLANTINE
ERIK KENERSON
Assistant United States Attorneys
CA Bar No. 208267 (Ballantine)
Ohio Bar Number 82960 (Kenerson)
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7252 (Ballantine)
            202-252-7201 (Kenerson)
Email: Jocelyn.Ballantine@usdoj.gov
       Erik.Kenerson@usdoj.gov


_____/s/_____
EVAN TURGEON
Trial Attorney
D.C. Bar Number 1010816
Counterintelligence
  and Export Control Section
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: 202-353-0176
Email: Evan.Turgeon@usdoj.gov