UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA   :

      v.            :            18-mj-088 (GMH)

MAJID GHORBANI   :

**DEFENDANT'S OPPOSITION TO MOTION FOR PRETRIAL DETENTION**

Mr. Majid Ghorbani made his initial appearance in this matter on August 16, 2018. At that time, the government requested a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A), arguing that Mr. Ghorbani presents a serious risk of flight. The Court scheduled the hearing for August 21, 2018. On the evening of August 20, 2018, the government submitted Government's Memorandum in Support of Pretrial Detention to the Court.[1] In response, Mr. Ghorbani, through undersigned counsel, respectfully submits the following. Because the government submits no factual basis for a finding that Mr. Ghorbani is a serious flight risk and there are conditions of release that will reasonably assure Mr. Ghorbani's appearance in court, Mr. Ghorbani respectfully requests that the Court deny the government's motion for pretrial detention and set conditions of release.

---

[1] The government indicates that an Indictment was returned on August 20, 2018, but the Indictment has not yet been docketed. Undersigned counsel has not yet been provided with a copy of the Indictment. Because the Indictment has not been docketed and the Criminal Complaint and Affidavit in Support of Criminal Complaint were filed under seal, the government delivered the pleading to the Court and counsel via email sent at approximately 6 p.m. Apparently, the government also provided information to the press, including the Affidavit, indicating that the Affidavit has been unsealed. Any order unsealing the affidavit also has not yet been docketed. For these reasons, undersigned counsel also submits this pleading to the Court via email and will file via ECF when the Indictment is docketed.

**Factual Background**

Mr. Ghorbani is 59 years old and has never before been arrested or charged with a criminal offense. He was born in Iran, but moved to the United States in 1995, and has lived and worked in California for twenty-three years. He moved to the United States because his parents, sister and two brothers had moved to California. His parents are now deceased, but his sister and brothers and their families still live in California. Mr. Ghorbani currently lives in an apartment in southern California with his younger brother. He has lived in this apartment for more than nine years. In 2015, he received his immigration status as a Legal Permanent Resident in the United States.

A little more than a year after he moved to the United States, Mr. Ghorbani's wife and daughter moved from Iran to live with him here. Although he later separated from his wife, they remain friends and raised their daughter together. Mr. Ghorbani has a very close relationship with his daughter, who is now 30 years old and works as a scheduling coordinator for an eye surgery center in California. His daughter has traveled to the District of Columbia for the detention hearing scheduled for August 21, 2018.

Mr. Ghorbani works as a server for a restaurant in Santa Ana. He has worked there for more than 20 years. He has established many friendships through his work and has many ties to his community in California. He is also a chef and frequently provides food for gatherings of friends and family.

Mr. Ghorbani was arrested in this matter on August 9, 2018. When he appeared for a removal hearing, he waived his detention pending his appearance before this Court primarily because the government agreed to keep the charges under seal pending his appearance in this Court and Mr. Ghorbani fears that his reputation in his community will be tarnished by the false

allegations that are the basis for the charges in this case. The government's Affidavit in Support of Criminal Complaint ("Affidavit" or "Aff.") sets forth the evidence the government allegedly has in this matter. In short, the government claims that Mr. Ghorbani acted as an agent of a foreign government, the Government of Iran, without prior notification to the Attorney General, as required by law, and provided services to Iran, without having first obtained the required license. Mr. Ghorbani strongly denies these charges, and of course, is presumed innocent. As set forth below, a review of the Affidavit submitted by the government demonstrates the weakness of the government's case and the lack of evidence to support the government's allegations, including no evidence of any involvement by any agent of the Government of Iran or any connection to that government – that allegation is based only on unsupported speculation. Cross-examination of a government agent with knowledge of the investigation in this case likely would have revealed further weaknesses in the government's case, but rather than permitting such cross-examination, government counsel has hurriedly sought and obtained an Indictment to deprive Mr. Ghorbani of his right to a preliminary hearing – and the public examination of a government witness – and avoid disclosing these weakness.

In preparation for the detention hearing scheduled for August 21st, undersigned counsel contacted a representative of the Pretrial Services Agency and requested confirmation that Mr. Ghorbani is eligible for placement in the High Intensity Supervision Program and that he could be supervised in the Central District of California. Counsel expects to have this confirmation by the time of the detention hearing. If released into this program and permitted to return home to California, Mr. Ghorbani can be placed on GPS monitoring. Mr. Ghorbani's daughter is available to escort him home and ensure that he reports to the Pretrial Services Agency in California.

**Argument**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Here, the government has requested pretrial detention pursuant to 18 U.S.C. § 3142(f)(2)(a), which provides for detention "in a case that involves . . . a serious risk that [the defendant] will flee." In order to hold Mr. Ghorbani without bond pursuant to this provision, it is not enough for the government to prove by a preponderance of the evidence that Mr. Ghorbani is a flight risk. The government "must prove by a preponderance of the evidence that the defendant poses a '*serious*' flight risk." *See United States v. Jamal*, 285 F.Supp.2d 1221, 1228 (D.Az. 2003) (emphasis added) (quoting 18 U.S.C. § 3142(f)(2)(A)). Moreover, the "[m]ere opportunity for flight is not sufficient grounds for pretrial detention." *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Bail Reform Act authorizes detention "only upon proof

of a likelihood of flight." *Id.* at 160.  The "preponderance must, of course, go to the ultimate issue: that no combination or conditions -- either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful -- can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

In this case, there is no reason to believe that Mr. Ghorbani is a "serious" risk or that there are no conditions of release which would be sufficient to assure his appearance.  Although Mr. Ghorbani is a citizen of Iran, his home is in the United States, where he has lived for more than 23 years.  His family – most importantly, his daughter – is here.  His employment – where he has worked for more than 20 years – is here, and his friends are here.

The D.C. Circuit has held that a defendant's ability to flee the country based merely on ties to a foreign country, without evidence that he is *likely* to flee, cannot serve as the basis for pretrial detention.  *See Xulam*, 84 F.3d at 443.  In *Xulam*, the court rejected the government's contention that the defendant -- an immigrant from Turkey who was charged with falsifying information on a passport and who had only been in the country for three years -- should be denied bail because nothing could stop him if he decided to flee.  *Id.* at 444.  The Court explained: "That, of course, is true of every defendant released on conditions; it is also not the standard authorized by law for determining whether pretrial detention is appropriate.  Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *Id.*; *see also United States v. Himler*, 797 F.2d 156 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention."); *Motamedi*, 767 F.2d at 1408 (revoking detention order for an Iranian citizen accused of illegal arms deals who allegedly had large bank accounts abroad and an ability to return to Iran with impunity).  This was true in *Xulam*, even when the

defendant was charged with passport fraud, suggesting at least a willingness to seek false documents that would allow him to leave the United States.

There is no evidence here of anything more than Mr. Ghorbani's foreign citizenship. This is not enough. The government must demonstrate – by proffering evidence – that Mr. Ghorbani presents a *likelihood* of flight.

The government argues that Mr. Ghorbani has strong ties to Iran because he has some extended family in Iran, but the facts are that his immediate family is in the United States. Most importantly, his daughter, with whom he shares a close relationship, is here. Although Mr. Ghorbani is a citizen of Iran, he is a lawful permanent resident of the United States. He has lived and worked in the United States for more than 23 years, and has built his life here. He has every reason to stay here, and no reason or ability to flee.

The Affidavit noted that Mr. Ghorbani traveled to Iran in 2018. This evidence merely demonstrates lawful travel between two countries. Evidence of lawful travel does not in any way indicate that Mr. Ghorbani has any intent to flee or that it is at all likely that he would flee.

The government argues that Mr. Ghorbani has a "history of deceptive conduct," but points only to the claim that he took photographs of public gatherings of the Mojahdin-e Khalq (MEK) and may have given them to someone who was opposed to the MEK. There is no evidence he deceived anyone or gained any information under false pretenses. Moreover, there is no evidence of Mr. Ghorbani ever violating any court order or failing to appear in Court.

The government argues that Mr. Ghorbani is loyal to the Government of Iran, but offers no evidence of any involvement with any known agent of the Government of Iran. The government suggests, with no evidence, that he has some ability to contact agents of Iran who could somehow help him escape. This is nothing but fantasy. The government argues that

Mr. Ghorbani could "enter any diplomatic vehicle belonging to any diplomat, any consulate, or any embassy and remain outside the reach of this Court." Gov't at 4.  Iran, however, has no diplomatic relations with the United States or agents with diplomatic immunity here in the United States.  The government notes that Iran has an Interests Section within the Pakistani Embassy, but the suggestion that an agent of Pakistan (or any other country) would jeopardize diplomatic relations with the United States by using diplomatic immunity to facilitate Mr. Ghorbani's escape is completely farfetched.

On the facts of this case, the government not only cannot demonstrate a likelihood of flight, but also cannot demonstrate that Mr. Ghorbani in fact has the ability to flee.  While Mr. Ghorbani is a citizen of Iran, he currently has no passport, and therefore, no ability to flee to Iran or anywhere else.  The government is in possession of Mr. Ghorbani's Iranian passport, and he is not eligible for a U.S. Passport.  *See Xulam*, 84 F.3d at 444 ("On a more practical level, the government has taken away all his passports and travel documents, so it is unlikely he could go far even if he wished to.").  Without a passport, he cannot travel, and the government's suggestion that he could somehow get another Iranian passport is not supported by the evidence.

Mr. Ghorbani also has no assets with which to flee.  As this Court has found, he is eligible for court-appointed counsel, and Mr. Ghorbani's daughter confirms that he has no assets.  Although he previously traveled to Iran, his daughter confirms that he planned that travel several months in advance and had to work hard to save his money for that trip.

The Court should also consider the weakness of the government's case.  The government claims that Mr. Ghorbani and a co-conspirator "acted in the United States as agents of a foreign power, to wit the Government of Iran, in order to conduct covert surveillance on and to collect information from and about the Mojahdin-e Khalq (MEK) and Israeli/Jewish groups, and to

7

provide this information back to the Government of Iran for the purpose of enabling the Government of Iran to target these groups." Aff. at 2.  While claiming that its case is strong, the government ignores the gaping hole in its case – there is absolute no evidence of any involvement with any known agent of the Government of Iran.  While the government repeatedly claims that Mr. Ghorbani was acting on behalf of the Iranian government, there is no evidence that Mr. Ghorbani was asked by an official of Iran to work as an agent or that Mr. Ghorbani provided any information to the Government of Iran.  The government speculates that because MEK is working in opposition to the Government of Iran, there must be some connection to that government, but even if the government's factual allegations were true, there is no evidence of such a connection to a foreign government.

The charges are also based on allegations that Mr. Ghorbani attended an MEK function, took photographs of this public event and provided those photographs of the public events and public figures to the co-defendant. Aff. at 10-11.  The government also alleges that Mr. Ghorbani took photographs of a second MEK event, and speculates that he was going to provide these photographs to the co-defendant.  In fact, the Affidavit itself alleges that when the co-defendant supposedly requested this information, Mr. Ghorbani said that he could not provide it. Aff. at 16.  While the government ominously alleges that Mr. Ghorbani is seen in a YouTube video taking photographs of the event and its participants, there are many photographs and videos of this event available on the internet – and anyone could obtain them there.  As the government represents, Mr. Ghorbani is seen on a video uploaded to the internet by MEK

Much of the government's additional allegations are based on pure speculation.  For example, the government agent who wrote the Affidavit states, "[b]ased on my training and experience, I further believe that [the co-defendant] in turn provided this flash/USB drive [which

8

the government claims contained the photographs taken by Mr. Ghorbani] to the Government of Iran." Aff. at 13.  The government offers not a shred of evidence to support that speculation.  It is nothing more than a guess.  The affidavit contains no proffer of any evidence that either the co-defendant or Mr. Ghorbani had any ties to the Government of Iran, and contains only sheer speculation that Mr. Ghorbani and the co-defendant were seeking to enable the Government of Iran to target the MEK.  Aff. at 2.

The government alleges that after he returned to the United States, government agents found "a document that appears to contain taskings for the future collection of information about the MEK" in Mr. Ghorbani's possession.[2]  Aff. at 14.  However, the affidavit contains no allegation as to when or how Mr. Ghorbani came into possession of this document nor any allegation that Mr. Ghorbani provided any information to anyone in response to this document.  In short, the government's case is not strong.

Finally, although the government has not requested detention based on any allegation of dangerousness, the government makes a suggestion that Mr. Ghorbani is a threat because of a remarks allegedly made on one of the surveillance tapes.  There is no evidence that this was a threat of any sort.  Moreover, that statement allegedly was made in December 17, 2017.  If the government thought Mr. Ghorbani was dangerous based on this conversation, it would not have waited eight months to arrest Mr. Ghorbani.

Given his lack of any prior criminal record, his strong ties to the United States (including family and employment), and his lack of a passport, Mr. Ghorbani is not a serious risk of flight.  These factors and the weakness of the government's case favor his release pending trial.  In light

---

[2] Notably, the Affidavit does not describe the search that allegedly led to the discovery of this document as "court-authorized," as other searches are described in the Affidavit, suggesting that this may not be evidence that could be used against Mr. Ghorbani at trial.

of all of these factors, there are conditions of release that will reasonably assure Mr. Ghorbani's appearance in court. As noted above, undersigned counsel has consulted with the Pretrial Services Agency, and although final confirmation has not yet been obtained, counsel believes that Mr. Ghorbani is eligible for participation in the Pretrial Services Agency's High Intensity Supervision Program and that courtesy supervision could be provided in the Central District of California. If released into the HISP program, the Court could require GPS monitoring to ensure that his movements are monitored.

## Conclusion

For the forgoing reasons, and such other reasons as may be presented at the detention hearing, Mr. Ghorbani respectfully moves this Honorable Court to release him on the condition that he comply with the conditions of the high intensity supervision program to be monitored in California.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500